**ANONYMOUS, an Attorney Admitted to Practice in the State of New York, Plaintiff-Appellant,**

v.

**The ASSOCIATION OF THE BAR OF the CITY OF NEW YORK and John G. Bonomi, Chief Counsel, Committee on Grievances of the Association of the Bar of the City of New York, Defendants-Appellees.**

**No. 508, Docket 74–2183.**

United States Court of Appeals, Second Circuit.

Argued Feb. 19, 1975.

Decided April 3, 1975.

---

Arthur S. Olick, New York City (Anderson, Russel, Kill & Olick, Steven M.

Pesner, New York City, of counsel), for plaintiff-appellant.

Saul Friedberg, New York City, for defendants-appellees.

Before ANDERSON, MULLIGAN and VAN GRAAFEILAND, Circuit Judges.

MULLIGAN, Circuit Judge:

The plaintiff is an attorney at law admitted to practice in the State of New York. On October 18, 1968, he was called to testify before a New York County grand jury which was then investigating possible undue influence upon the New York City Planning Commission. Before he testified he was granted transactional immunity,[1] and he thereafter testified on October 18, November 15 and November 21, 1968. On February 4, 1971, a justice of the Supreme Court, New York County, issued an order which authorized the District Attorney of New York County to release the minutes of the plaintiff's testimony to the Grievance Committee of the defendant Association of the Bar of the City of New York (Committee), and, pursuant to the order, some 1500 pages of minutes were delivered to the Committee in March, 1971. On January 11, 1973, the Committee invited the plaintiff to appear and discuss his grand jury testimony in connection with a review by the Committee of the conduct of certain attorneys who had appeared before the grand jury in 1968. Plaintiff did not appear before the Committee but rather submitted through counsel, on April 26, 1973, a twenty-five page statement which, in substance, provided all the information contained in his earlier grand jury testimony. On May 31, 1973, counsel for the Committee instituted a disciplinary proceeding against the plaintiff by serving on him a notice containing the charge made against him and the alleged facts upon which it was based. On June 13, 1973, plaintiff submitted an answer substantially admitting the facts set forth by counsel for the Committee but denying knowledge of any illegal activity which may have taken place with regard to the Planning Commission.

A hearing was held before a panel of the Committee on June 21, 1973, and the plaintiff appeared with counsel. The grand jury minutes containing plaintiff's testimony were admitted in evidence without objection by plaintiff's then counsel. The panel sustained the charges and made the recommendation that further disciplinary proceedings be brought in the Appellate Division, First Department, of the New York Supreme Court. Thereafter, plaintiff obtained new counsel, who requested a new hearing on the ground, *inter alia*, that the use of the immunized grand jury minutes violated plaintiff's constitutional rights under the Fifth Amendment. A new hearing was granted by the Committee, and, on April 16, 1974, a new charge letter was sent to the plaintiff; the hearing was held on May 7, 1974 before a new panel of the Committee. The grand jury minutes were again offered, and, this time over the objection of plaintiff's counsel, were admitted into evidence. The hearing was then adjourned until June 4, 1974. On that

---

1. The grant of immunity was made in the following manner:

The granting of immunity means you cannot be prosecuted for any State violation as a result of your testimony here today or documents that you may have produced here today. However, you can be prosecuted for the crime of perjury, or if you lie to this Grand Jury, tell the Jury something that is not truthful, and for the crime of contempt, if you refuse to answer a question, a legal, proper and relevant question, or if you give an answer that can be deemed to be evasive.

. . . . .

I remind you that immunity is still in effect and I also caution you that if this Grand Jury believes that you are avoiding or attempting to avoid giving answers to the questions or deliberately avoiding giving answers to questions, that you can be charged with contempt for that; and if you lie to this Grand Jury, that you can be charged with the crime of perjury.

. . . . .

As I explained before, those are the only two State crimes that you can be charged with as a result of your testimony here today or documents that you produce here.

date, plaintiff commenced an action in the United States District Court for the Southern District of New York for declaratory and injunctive relief under 28 U.S.C. §§ 1331, 1343, 2201 and 2202.

Plaintiff moved by order to show cause for a preliminary injunction and the defendants made a cross-motion for judgment dismissing the complaint for failure to state a claim on which relief could be granted. Both motions were heard on July 3, 1974 before Hon. Thomas P. Griesa, United States District Judge, who handed down an opinion and order dated July 31, 1974, which denied the plaintiff's motion and granted the defendants' cross-motion dismissing the complaint. This appeal followed. Further proceedings by defendants have been stayed pending the determination of the appeal by this court.

## I

The court below did not reach the constitutional issue raised by the plaintiff (the impropriety of defendants' use of plaintiff's compelled testimony in disciplinary proceedings against him) but based its determination on the ground of abstention, relying upon Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and the application of its doctrine by this court in Erdmann v. Stevens, 458 F.2d 1205 (2d Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972). In Erdmann, the justices of the Appellate Division, First Department, of the State of New York had served upon the plaintiff a petition and order to show cause charging him with ethical violations arising from statements attributed to him in an article in which he allegedly attacked, in colorful terms, the competence and the character of the state trial and appellate courts. Erdmann brought an action in the United States District Court for the Southern District of New York, urging that the proceeding brought by the justices was for the purpose of discouraging and preventing his exercise of First Amendment rights. This court unanimously held that the abstention doctrine

of Younger v. Harris, *supra,* was applicable and required dismissal of the complaint, with both the majority opinion of Judge Mansfield (writing also for Judge Mulligan) and the concurring opinion of Judge Lumbard emphasizing our reluctance, and indeed refusal, to intrude in the application of standards of professional conduct and moral character by state courts to their court officers. Thus, Judge Mansfield observed:

The relationship between a court and those practicing before it is a delicate one. It would appear axiomatic that the effective functioning of any court depends upon its ability to command respect not only from those licensed to practice before it but also from the public at large. It requires little vision to appreciate that if a state court were subject to the supervisory intervention of a federal overseer at the threshold of the court's initiation of a disciplinary proceeding against its own officer, the state judiciary might suffer an unfair and unnecessary blow to its integrity and effectiveness. 458 F.2d at 1210.

Judge Lumbard also stated:

While these principles [*Younger* abstention] were stated in cases involving state criminal proceedings, I believe that they apply with equal force to proceedings regarding the conduct of members of the state bar. The state "has a legitimate interest in determining whether [an individual] has the qualities of character and the professional competence requisite to the practice of law." Baird v. State Bar of Arizona, 401 U.S. 1, 7, 91 S.Ct. 702, 706, 27 L.Ed.2d 639 (1971). Indeed the state's responsibility in these matters is primary. A lawyer to practice anywhere in the United States must first be admitted to the bar of one of the states. In New York, as in all of the states, the proper functioning of the judicial system depends upon the competence and integrity of the members of the bar and their compliance with appropriate standards of professional responsibility. 458 F.2d at 1213.

Appellant's principal assault upon *Erdmann* is founded upon the contention that *Younger* abstention does not properly apply since the pending disciplinary proceedings are civil in nature, although appellant somewhat anomalously asserts at the same time that they are criminal with respect to the vesting of Fifth Amendment privileges. Appellant claims that *Erdmann* has been eroded by Judge Smith's comment in his opinion for this court in Blouin v. Dembitz, 489 F.2d 488, 490–91 (1973) that *Younger* abstention should be limited to cases involving traditional criminal proceedings until the Supreme Court instructs otherwise. The opinion did not cite *Erdmann* and of course did not purport to override it. More significantly, however, the Supreme Court has recently instructed otherwise and has explicitly extended the *Younger* doctrine so that its application does not depend upon the simplistic civil-criminal dichotomy.

In Huffman v. Pursue, Ltd., —— U.S. ——, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), a sheriff and a prosecuting attorney of an Ohio county instituted a proceeding under a state statute which provided that a place which exhibits obscene films is a nuisance; the statute mandated closure for up to a year as well as authorizing preliminary injunctive relief, the sale of all personal property used in conducting the nuisance and the release of the closure order only upon the satisfaction of certain conditions. The state court determined that the theatre in question had exhibited obscene films and ordered its closure for a year. Appellee, Pursue, Ltd., successor to the leasehold to the theatre, rather than appealing the state court order filed suit based on 42 U.S.C. § 1983 in the federal district court, seeking a declaration that the Ohio statute was unconstitutional and also requesting injunctive relief. A three-judge district court concluded that the statute constituted an overly broad prior restraint on First Amendment rights and issued permanent injunctive relief.

On direct appeal the Supreme Court vacated the lower court decision, holding *Younger* applicable. Mr. Justice Rehnquist noted in his opinion for the Court that, while *Younger* did involve pending criminal proceedings, the Court in that case had explained that

this doctrine "is reinforced by an even more vital consideration," an aspect of federalism which we described as

"The notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."

*Id.*, 401 U.S. at 44 [91 S.Ct. at 750].

Central to *Younger* was the recognition that ours is a system in which

"the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Ibid.* Id. at ——, 95 S.Ct. at 1207.

The *Huffman* Court stated further that:

interference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies. Such interference also results in duplicative legal proceedings, and can readily be interpreted "as reflecting negatively upon the state courts' ability to enforce constitutional principles."

The component of *Younger* which rests upon the threat to our federal system is thus applicable to a civil proceeding such as this quite as much as it is to a criminal proceeding. Id. at ——, 95 S.Ct. at 1208 (citation omitted).

In addition to its basic underpinnings of federalism and comity, *Younger,* the *Huffman* Court indicated, also rested upon the traditional reluctance of, courts of equity to interfere with criminal proceedings.

> [W]hatever may be the weight attached to this factor in civil litigation involving private parties, we deal here with a state proceeding which in important respects is more akin to a criminal prosecution than are most civil cases. The State is a party to the Court of Common Pleas proceeding, and the proceeding is both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials. Thus, an offense to the State's interest in the nuisance litigation is likely to be every bit as great as it would be were this a criminal proceeding. Id.

■■■ *Huffman* thus establishes that the principles of comity and federalism which are at the heart of *Younger* are not to be discarded simply because the state action sought to be enjoined is yclept civil.[2] The further inquiry is whether the proposed interference in the civil case is comparable to the disruption in *Huffman* of the state's interest in maintaining the standards of its criminal laws. We noted in *Erdmann* that the Supreme Court (In re Ruffalo, 390 U.S. 544, 551, 88 S.Ct. 1222, 20 L.Ed.2d 117

(1968)) had characterized disbarment proceedings to be "of a quasi-criminal nature." 458 F.2d at 1210. They are thus similar to the Ohio civil closure and injunctive procedures in *Huffman* and involve much more than private litigation between individual litigants.

The interest of the state court in adjudicating the continuing professional fitness and character of its own officers is at least as great as the interests of the State of Ohio in policing the exhibition of pornographic material. Today more than ever, the integrity of the bar is of public concern and the state which licenses those who practice in its courts, and which is the only body that can impose sanctions upon those admitted to practice in its courts, should not be deterred or diverted from the venture by the interloping of a federal court. As Mr. Justice Frankfurter observed in Theard v. United States, 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957), the "two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom, in the present context, lawyers are included."

■■■ Whatever federal constitutional questions are involved here can certainly be raised in the state courts and ultimately addressed to the Supreme Court, and appellant proffers no contrary contention.[3]

---

**2.** The rejection of the civil-criminal litmus test in *Huffman* was presaged by other circuits, in addition to our own holding in *Erdmann.* Lynch v. Snepp, 472 F.2d 769, 773 (4th Cir. 1973), cert. denied, 415 U.S. 983, 94 S.Ct. 1576, 39 L.Ed.2d 880 (1974); Palaio v. McAuliffe, 466 F.2d 1230, 1232–33 (5th Cir. 1972); Cousins v. Wigoda, 463 F.2d 603 (7th Cir.), application for a stay denied, 409 U.S. 1201, 92 S.Ct. 2610, 34 L.Ed.2d 15 (1972). In denying the stay in *Cousins,* Justice Rehnquist noted:

> While *Younger* and its companion cases involved state criminal prosecutions, the principles of federal comity upon which it was based are enunciated in earlier decisions of this Court dealing with civil as well as criminal matters. 409 U.S. at 1205, 92 S.Ct. at 2614.

**3.** The only other authority for the debility of *Erdmann* suggested by the appellant was the

following *en passant* comment of Judge Oakes in a footnote in his dissenting opinion in Tang v. Appellate Division, 487 F.2d 138, 146 n. 4 (2d Cir. 1973), cert. denied, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974): "Even application of the doctrine of 'comity' in the disciplinary context in *Erdmann* is open to dispute, moreover, in view particularly of the Supreme Court's recent decision in Gibson v. Berryhill, 411 U.S. 564, 575–577, 93 S.Ct. 1689, 36 L.Ed.2d 488 . . . (1973)." In *Gibson,* the plaintiffs had brought an action against the Alabama Board of Optometry and the Alabama Optometric Association under 42 U.S.C. § 1983, seeking to enjoin administrative proceedings concerning professional misconduct brought against plaintiff optometrists. The Court held that *Younger* was not applicable since the claim was made that the Board was biased and unconstitutionally constituted and there was thus no opportunity for a competent

## II

Appellants seek to distinguish *Erdmann* by pointing out that the attorney-plaintiff in that case was seeking to enjoin a proceeding actually pending in the Appellate Division whereas the injunctive relief sought here is only to be directed to the Grievance Committee of the Bar Association. We do not consider the distinction to be meaningful. Section 90(2) of the New York Judiciary Law, McKinney's Consol.Laws, c. 30,[4] provides that the Appellate Division of the Supreme Court in each Department is authorized to censure, suspend or remove from office counsellors-at-law admitted to practice. Rule 603.12 of the Rules of the Appellate Division, First Department,[5] empowers the Grievance Committee of the defendant Association to conduct preliminary investigations of professional misconduct and to issue subpoenas in the name of the presiding justice. The Committee has an office and a staff to perform this function as an arm of the court, much as a special master appointed in the federal court. See Erdmann v. Stevens, *supra,* 458 F.2d at 1209.

As Chief Judge Fuld, writing for a unanimous court in Wiener v. Weintraub, 22 N.Y.2d 330, 331–32, 292 N.Y.S.2d 667, 668–69, 239 N.E.2d 540, 541 (1968), noted:

> Petitions or complaints charging professional misconduct of an attorney which, in the past, were presented to the General Term of the Supreme Court are now usually filed with the Grievance Committee of a bar association. And, it has been observed, a proceeding before such a committee constitutes a "judicial proceeding." In the investigation of such complaints and in the conduct of such proceedings, then, the bar association's Grievance Committee acts as a quasi-judicial body and, as such, is an arm of the Appellate Division.

(Citations omitted). See also Doe v. Rosenberry, 255 F.2d 118 (2d Cir. 1958) (holding the order of a district court judge, which authorized the transmittal of federal grand jury minutes to the Grievance Committee of the Association of the Bar of the City of New York, to be within Fed.R.Crim.P. 6(e), which pro-

---

state tribunal to decide the federal issues involved. This distinction was observed in *Huffman,* ⸺ U.S. at ⸺, 95 S.Ct. 1200. Aside from this, *Gibson* involved administrative and not judicial proceedings. There is here, of course, no claim of constitutional infirmity in the judicial body or its agent Committee. Even before *Gibson* the applicability of *Younger* to administrative proceedings was announced in Geiger v. Jenkins, 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971). In any event, it is now apparent that predictions of *Erdmann's* demise were premature.

**4.** Section 90(2) provides:

The supreme court shall have power and control over attorneys and counsellors-at-law and all persons practicing or assuming to practice law, and the appellate division of the supreme court in each department is authorized to censure, suspend from practice or remove from office any attorney and counsellor-at-law admitted to practice who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice; and the appellate division of the supreme court is hereby authorized to revoke such admission for any misrepresentation or suppression of any infor-

mation in connection with the application for admission to practice.

**5.** Rule 603.12 provides:

(a) Upon application by the chairman or acting chairman of the Committee on Grievances of the Association of the Bar of the City of New York, or the Committee on Discipline of the New York County Lawyers' Association, or the Committee on Grievances of the Bronx County Bar Association, or the Co-Ordinating Committee on Discipline, disclosing that such committee is conducting a preliminary investigation of professional misconduct on the part of an attorney, or upon application by an attorney under such investigation, the clerk of this court shall issue subpoenas in the name of the presiding justice for the attendance of witnesses and production of books and papers before such committee, or any subcommittee of such committee, designated in such application, at the time and place within the First Judicial Department that said committee, or subcommittee, regularly meets.

(b) Each committee or subcommittee conducting such a preliminary investigation is empowered to take and transcribe the evidence of witnesses, who may be sworn by any person authorized by law to administer oaths.

vides for disclosure of matters occurring before a grand jury when so ordered by a court "preliminarily to or in connection with a judicial proceeding.").

■ The fact that the Appellate Division may disregard the recommendations of the Committee emphasizes the role of that bench in determining the continuing qualifications of its bar. Interfering with its regular processes of investigation at this point would thwart that prerogative just as much as if the injunction had been sought at a later date. In our view, had Judge Griesa issued an injunction, there would have been an interference with a state judicial proceeding.

### III

Appellant urges other reasons for avoiding *Younger* and *Erdmann* which are not persuasive. In *Younger,* as this court has recently pointed out in Gajon Bar & Grill, Inc. v. Kelly, 508 F.2d 1317 (1974), the Supreme Court emphasized that normally there should be no interference with state court proceedings absent very special circumstances involving danger of great and immediate irreparable loss. 401 U.S. at 45, 91 S.Ct. 746. The appellant here urges that the failure of the Committee to institute proceedings against him until 1973, although he testified before the grand jury in 1968 and the Committee obtained the minutes in 1971, constitutes such bad faith as to make *Younger* inapplicable.

In Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the Court found that the actions of state prosecutors were so harassing that, if the appellants had been denied federal relief, they would have suffered irreparable injury far beyond that associated with the defense of a single prosecution brought in good faith, which is the standard for intervention set by the *Younger* Court, 401 U.S. at 48, 91 S.Ct. 746. However, in *Dombrowski,* the appellants had offered to prove

that their offices had been raided and all their files and records seized pursuant to search and arrest warrants that were later summarily vacated by a state judge for lack of probable cause. They also offered to prove that . . . the prosecutor was continuing to threaten to initiate new prosecutions of appellants under the same statutes [whose doubtful constitutionality induced appellants to seek federal injunctive relief], was holding public hearings at which photostatic copies of the illegally seized documents were being used, and was threatening to use other copies of the illegally seized documents to obtain grand jury indictments against the appellants on charges of violating the same statutes. Younger v. Harris, *supra,* 401 U.S. at 48, 91 S.Ct. at 752.

■ All that is urged here to establish harassment is the lapse of time between the giving of the grand jury testimony and the initiation of the disciplinary proceeding. There is no showing of bad faith and no showing that the delay prejudiced the appellant or precluded him from defending the charges made in the disciplinary proceeding. He appeared by counsel and he was given a second hearing at his request, but, before even knowing of the determination of the second panel, he proceeded to the federal court. There is no indication that the defendants were "out to get" the plaintiff or that there was no basis in fact for bringing the action. Allee v. Medrano, 416 U.S. 802, 819, 836, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). In fact, the record indicates, if anything, solicitude for his rights.

■ Appellant also urges that abstention should not be invoked here because prior opinions of the New York courts have consistently held that attorneys may be disciplined even though solely on the basis of immunized testimony. Assuming that this is the fact, although we do not reach the merits here, the argument hardly rises to the magnitude of the "extraordinary circumstance" which appellant characterizes it in an effort to come within the *Younger* rule. The courts in New York are certainly competent to consider and determine federal

constitutional questions, and if, as appellant claims, the United States Supreme Court has made contrary decisions construing the application of Fifth Amendment rights in disbarment proceedings, the New York courts are no more free to disregard them than we are. The expectation of lack of success on the constitutional questions at the state level cannot be equated with the arbitrary disregard of constitutional rights referred to in such cases as *Dombrowski* and *Allee, supra.* There is no suggestion that the New York courts are either hostile to the plaintiff or that they are deliberately ignoring or disregarding Supreme Court precedent. If the appellant does not persuade the state courts to adopt his view, he can ultimately seek relief in the Supreme Court. The Supreme Court rejected a contention similar to appellant's in Huffman v. Pursue, Ltd., *supra:*

> [W]e are of the opinion that the considerations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that his chances of success on appeal are not auspicious. . . . Appellee is in truth urging us to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities. This we refuse to do. —— U.S. at ——, 95 S.Ct. at 1211.[6]

■ Finally, appellant argues that, if he is not entitled to injunctive relief, he

is at least deserving of a declaratory judgment on the constitutional issue. Since we have held that there is a pending judicial proceeding in the state court within the scope of *Younger,* the appellant is clearly not entitled to declaratory relief. Steffel v. Thompson, 415 U.S. 452, 461, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

Affirmed.

---

**6.** The only authority cited by appellant is Helfant v. Kugler, 484 F.2d 1277 (3d Cir. 1973), reconsidered en banc, 500 F.2d 1188, cert. granted, 419 U.S. 1019, 95 S.Ct. 492, 42 L.Ed.2d 292 (1974). The facts in that case are totally different from those before us and, as the court there repeatedly stressed, e. g., 500 F.2d at 1197, were extraordinary. A state court judge who had taken the Fifth Amendment before a grand jury investigating corruption was called into the chambers of the New Jersey Supreme Court, where he was questioned by members of that court as to why a judge should take advantage of the constitutional privilege. He advised the court that he would testify; he did and was later indicted. He then claimed that his testimony before the grand jury was coerced by the Jersey Supreme Court. His federal action, which alleged that

his Fifth Amendment rights had been violated by the very court which would ultimately determine the merits of his case and which could make its own findings of fact de novo, sought declaratory and injunctive relief against the pending state prosecution. The Third Circuit denied the plaintiff's request for injunctive relief upon the authority of Younger v. Harris, but held that *Younger* did not preclude the issuance of limited declaratory relief as to the voluntariness of his grand jury testimony in light of the extraordinary circumstances making resort to the state courts on the voluntariness question an inadequate remedy. These "extraordinary circumstances" certainly do not appear here. There is not a hint or even an allegation of any improper involvement by the Committee or the state courts in appellant's case.