Jerome **TEPPER**, Plaintiff,

v.

**STATE BAR OF WISCONSIN et al., Defendants.**

No. 80–C–137.

United States District Court, E. D. Wisconsin.

April 25, 1980.

---

Robert E. Sutton, Milwaukee, Wis., for plaintiff.

Bronson C. La Follette, Atty. Gen., by LeRoy L. Dalton, Asst. Atty. Gen., Madison, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

In this action for declaratory and injunctive relief and damages under 42 U.S.C. § 1983, the plaintiff, a member of the Wisconsin state bar, seeks to stop disciplinary proceedings brought against him by the state bar. The plaintiff alleges that the proceedings against him have violated his First and Fourteenth Amendment rights. The case is presently before me on the plaintiff's motion for a preliminary injunction and on the defendants' motion to dismiss. For the following reasons, I find that the defendants' motion should be granted.

## I. FACTS

On or about September 25, 1978, the plaintiff, Jerome Tepper, was served with a notice of an investigatory meeting by Robert E. Tehan, Jr., chairman, district 2 of the Board of Attorneys Professional Responsibility. The notice advised Mr. Tepper that the meeting would concern advertisements placed by Mr. Tepper and his partner, Jack Marcus, on and after August 22, 1978, in the *Milwaukee Sentinel* and other newspapers. Mr. Tepper was further notified that the meeting would be for the purpose of determining whether the advertisements violated various provisions of the American Bar Association's Code of Professional Responsibility.

The investigation concerning these advertisements continued from November, 1978, to April, 1979, before a three person subcommittee of the district 2 committee of the Board of Attorneys Professional Responsibility. During the course of the subcommittee's investigation, adversary hearings were held at which Messrs. Tepper and Marcus appeared in person and with counsel. At the conclusion of its investigation, the subcommittee voted 2 to 1 to recommend dismissal of the complaint against the plaintiff and his partner.

On July 9, 1979, the full District 2 Professional Responsibility Committee filed its findings, conclusions and recommendation "that the Board of Attorneys Professional Responsibility file a complaint seeking public discipline and an order requiring Marcus & Tepper to cease and desist from publishing such false, misleading and deceptive advertising."

On July 24, 1979, Richard Cayo, staff counsel for the Board of Attorneys Professional Responsibility, advised the plaintiff and his partner that a report on the district committee's recommendation would be made to the board at its meeting on July 30, 1979. They were further advised that if they wished to make an appearance or supply written material to the board, they could do so before the board reached a decision as to whether it should issue a complaint. Mr. Cayo also stated in his letter:

"As you know, the proceedings to date have been investigatory in nature. The Board makes the prosecutorial decision. The District Committee's function is advisory. The board is bound by neither its conclusions nor the scope of its inquiry."

Subsequently, Mr. Tepper's attorney filed a brief with the board.

On January 24, 1980, the board filed a complaint against Messrs. Tepper and Marcus. The respondents were directed to an-

swer the complaint within twenty days of its service. On February 14, 1980, the plaintiff filed the instant action and motion for a preliminary injunction, seeking to enjoin the state bar and members of the Board of Attorneys Professional Responsibility from imposing sanctions on the plaintiff.

## II. MOTION TO DISMISS

The defendants have moved to dismiss this action on the basis of the principle of equitable restraint established in *Younger v. Harris*, 401 U.S. 37, 43–47, 91 S.Ct. 746, 750–752, 27 L.Ed.2d 669 (1971). I believe that the operative principles applicable to this case can be found in the *Younger* line of cases. *See Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 2377–2382, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez*, 431 U.S. 434, 440–44, 97 S.Ct. 1911, 1916–18, 52 L.Ed.2d 486 (1977); *Juidice v. Vail*, 430 U.S. 327, 334–37, 97 S.Ct. 1211, 1216–18, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 599–605, 95 S.Ct. 1200, 1205–08, 43 L.Ed.2d 482 (1975); *Gibson v. Berryhill*, 411 U.S. 564, 575–77, 93 S.Ct. 1689, 1696–97, 36 L.Ed.2d 488 (1973); *Samuels v. Mackell*, 401 U.S. 66, 69–73, 91 S.Ct. 764, 766–68, 27 L.Ed.2d 688 (1971). *See generally* L. Tribe, American Constitutional Law § 3–41, at 152–56. *See also Seraphim v. Judicial Conduct Panel*, 483 F.Supp. 295 (E.D.Wis.1980).

To determine the applicability of *Younger*, I need resolve only two issues: (1) Is the state's interest in the pending disciplinary proceeding against Mr. Tepper of sufficient importance to activate the policies underlying the doctrine of equitable restraint on the part of the federal court? (2) If equitable restraint is called for, should the court nonetheless consider the merits of the case because one or more of the recognized exceptions to the *Younger* doctrine are present?

### A. *The Importance of the State's Interests*

A number of courts have considered the question whether a state's interest in disciplinary proceedings against attorneys is sufficient to trigger the equitable restraint established in *Younger*. *See Gipson v. New Jersey Supreme Court*, 558 F.2d 701 (3rd Cir. 1977); *Anonymous v. Association of the Bar*, 515 F.2d 427 (2d Cir.), cert. denied, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975); *Goodrich v. Supreme Court of South Dakota*, 511 F.2d 316 (8th Cir. 1975); *Erdmann v. Stevens*, 458 F.2d 1205 (2d Cir. 1972); *Niles v. Lowe*, 407 F.Supp. 132 (D.Haw.1976). In each of these cases the courts concluded that the interest of a state court system in regulating the conduct of those attorneys practicing in the system was sufficient to provoke equitable restraint on the part of a federal court which is asked to enjoin an ongoing disciplinary proceeding.

The reasoning underlying this conclusion is set forth by Judge Lumbard in his concurring opinion in *Erdmann v. Stevens*, supra, at 1213:

"While these principles were stated in cases involving state criminal proceedings, I believe that they apply with equal force to proceedings regarding the conduct of members of the state bar. The state 'has a legitimate interest in determining whether [an individual] has the qualities of character and the professional competence requisite to the practice of law.' *Baird v. State Bar of Arizona*, 401 U.S. 1, 7, 91 S.Ct. 702, 706, 27 L.Ed.2d 639 (1971). Indeed the state's responsibility in these matters is primary. A lawyer to practice anywhere in the United States must first be admitted to the bar of one of the states. In New York, as in all of the states, the proper functioning of the judicial system depends upon the competence and integrity of the members of the bar and their compliance with appropriate standards of professional responsibility. Thus, when state courts do initiate an inquiry into an attorney's conduct, they deal with a matter of such great importance to the state and its citizens that federal courts should be as slow to intervene in these proceedings as in state criminal proceedings."

For the reasons stated by Judge Lumbard and the courts in the other above-cited cases, I find that the state's interest in

attorney disciplinary proceedings is sufficient to kindle the doctrine of equitable restraint established by *Younger.*

### B. *Exceptions to Applying Equitable Restraint*

The *Younger* doctrine requires dismissal of this case unless (1) the plaintiff will be unable to raise his constitutional contentions in the pending state proceeding, or (2) the statute and rules under which the state bar is proceeding against Mr. Tepper are so patently unconstitutional as to justify immediate intervention, or (3) the pending disciplinary proceeding has been brought in bad faith or to harass the plaintiff. *See, e. g., Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). In the instant case the plaintiff contends that the defendants have acted in bad faith in their conduct of the action against Mr. Tepper.

To support his contention that the defendants have acted in bad faith, the plaintiff points to the fact that the district 2 committee recommended that a complaint be issued despite the fact that a subcommittee had previously recommended that the complaint be dismissed. The plaintiff also alleges that the district 2 committee made its recommendation without reviewing the transcript of the subcommittee's hearing.

These allegations fall far short of the "harassment" and "bad faith" contemplated by the Supreme Court in *Younger.* There is no suggestion that the disciplinary proceeding against Mr. Tepper is part of a series of proceedings to which he has or will be subjected. There is no suggestion that the district 2 committee was without legal authority to make its own recommendation despite the contrary suggestion made by its subcommittee.

Finally, the suggestion that the proceedings against the plaintiff reflect bad faith on the part of the defendants ignores the fact that the recommendation of the district committee will be scrutinized several times before any sanctions could be imposed on the plaintiff. The district 2 committee made a nonbinding recommendation to the state board; before the latter board issued a complaint, he was given the opportunity to respond to the charges against him. Now that the state board has issued a complaint, the plaintiff and his partner will be afforded a hearing before a referee appointed by the state supreme court. This hearing will contain all the characteristics of due process afforded litigants in the Wisconsin judicial system, including the opportunity to attack the constitutionality of the regulations or the procedures being used against the plaintiff. The plaintiff will then have the opportunity to appeal the referee's decision to the state supreme court in accordance with the rules governing civil appeals.

Accordingly, I find that the plaintiff's allegations are not sufficient to constitute "bad faith" as contemplated by the Supreme Court in *Younger.* This conclusion is supported by the decision of the court in *Erdmann v. Stevens*, 458 F.2d 1205 (2d Cir. 1972). In that case, the justices of the New York state appellate division filed a grievance with the Association of the Bar of the City of New York grounded upon the alleged impropriety of Mr. Erdmann's comments in a magazine article. The bar's committee recommended that no disciplinary action be taken against Mr. Erdmann. Despite this recommendation, the justices instituted disciplinary proceedings against him, which were pending when he sued to enjoin such proceedings in federal court. The court of appeals affirmed the dismissal of Mr. Erdmann's federal complaint in light of the *Younger* doctrine:

"Erdmann urges that the presumption against federal court intervention has been overcome by his allegation of 'bad faith' in the initiation of the state disciplinary proceeding. However, his complaint merely alleges that the initiation of the disciplinary proceedings has 'the specific purpose and the effect of depriving the plaintiff of his right[s] . . . under the First Amendment. . . .' In his supporting affidavit, he alleges no more than that 'it is unique for the Appellate Division to overrule' its Grievance

Committee and that the pendency of the proceeding 'harass[es], discourage[s] and prevent[s]' him from exercising his First Amendment rights. These allegations do not reach the level of 'bad faith' warranting federal intervention. It is the judges and not the Grievance Committee who have the responsibility for deciding whether to begin disciplinary proceedings. N.Y.Jud.Law § 90. The allegation that the judges have acted with the intention of chilling Erdmann in the exercise of his First Amendment rights can be presented and adjudicated in the state courts, with appeal to the Supreme Court. Only were it abundantly clear that Erdmann had been subjected to multiple prosecution or continued harassment or action under a patently unconstitutional statute would federal injunctive relief be available. *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Younger v. Harris, supra*, 401 U.S. at 53–55, 91 S.Ct. 746 at 754–755." 458 F.2d at 1213 (Judge Lumbard concurring).

In sum, I hold that the *Younger* doctrine precludes the granting of a preliminary injunction in this case and also requires that the plaintiff's complaint be dismissed.

Therefore, IT IS ORDERED that the plaintiff's motion for a preliminary injunction be and hereby is dismissed.

IT IS ALSO ORDERED that the defendants' motion to dismiss this action be and hereby is granted.

IT IS FURTHER ORDERED that this action be and hereby is dismissed.