Rose Cherubino, as Committee of the Estate of Frank Cherubino, Respondent, v. James Meenan et al., Appellants.

(Argued April 8, 1930; decided May 6, 1930.)

*Joseph F. Hanley* and *Leo M. Brimmer* for appellants. The trial court erred by admitting in evidence a traffic

regulation of the Police Commissioner of the city of New York, which was invalid because the Police Commissioner had no power to change by police regulation the common law as to the right of way between pedestrians and vehicles by giving pedestrians the right of way at street crossings. (*Castro* v. *New York Rys. Corp.*, 224 App. Div. 623; *Baker* v. *Close*, 204 N. Y. 92.)

*James A. Gray* and *William S. Butler* for respondent. The Legislature may require that the Police Commissioner shall make such rules and regulations for the conduct of vehicular traffic in the use of the public streets, squares and avenues as he may deem necessary. (*People ex rel. Devery* v. *Coler*, 173 N. Y. 103; *Castro* v. *New York Rys. Corp.*, 224 App. Div. 623; *People ex rel. Cavanagh* v. *Waldo*, 205 N. Y. 589; *Wormser* v. *Brown*, 149 N. Y. 163; *People ex rel. Leiberman* v. *Van DeCarr*, 175 N. Y. 440; 199 U. S. 552; *McCutcheon* v. *Terminal Station Comm.*, 217 N. Y. 127; *Matter of Manuel* v. *Board of Regents*, 250 N. Y. 173.)

CRANE, J. The ruling made on the trial of this case brings up for review the extent of the power of the Police Commissioner of the city of New York to make traffic rules and regulations. That the Legislature may confer such power upon municipal authorities is well established (Dillon, Municipal Corporations [5th ed.], vol. 2, § 574, p. 903); and that this power may be conferred upon a department of a city government, as well as given to its legislative assembly, is also recognized. (*People ex rel. Lieberman* v. *Vandecarr*, 175 N. Y. 440; *Matter of Mandell* v. *Bd. of Regents*, 250 N. Y. 173; *Wormser* v. *Brown*, 149 N. Y. 163; *People ex rel. Cavanagh* v. *Waldo*, 72 Misc. Rep. 416; 149 App. Div. 927; 205 N. Y. 589; *People* v. *New York Edison Co.*, 159 App. Div. 786; *People ex rel. Cox* v. *Special Sessions*, 7 Hun, 214.)

The charter of the city of New York, therefore, must determine for us the nature and extent of the Commissioner's authority over the streets.

By section 315, the police department is empowered to " regulate, direct, control, restrict and direct the movement of all teams, horses, carts, wagons, automobiles and all other vehicles in streets, bridges, squares, parks and public places, for the facilitation of traffic and the convenience of the public as well as the proper protection of human life and health, and to that end the police commissioner shall make such rules and regulations for the conduct of vehicular traffic in the use of the public streets, squares and avenues as he may deem necessary, the violation of which rules and regulations shall be a misdemeanor punishable by not less than two or more than thirty days' imprisonment, or by a fine of not less than five or more than fifty dollars, or both."

Similar power is conferred by section 43 upon the Board of Aldermen, subject to a like power over the streets and highways, given by section 242 to the Board of Estimate and Apportionment. These three departments of the city government must naturally work in harmony, the lowest in the grade being the Police Commissioner, who can make no rules and regulations inconsistent with the action of the other two, or with any statute of the State.

Acting under section 315, the Police Commissioner made a regulation which is referred to as subdivision b, article II, section 6, Traffic Regulations, reading as follows: " Pedestrians, where no Police Officer is present and no traffic light control system is in operation, shall have the right of way on crossings and vehicles must slow down and stop, if necessary, to permit pedestrians on crossings to pass."

In *Baker* v. *Close* (204 N. Y. 92) this court said that " the right of passage is common to all, and both footmen and drivers are bound to exercise reasonable care for their own safety and the safety of others upon the street. * * * At * * * street crossings both pedestrians and drivers are required to exercise that degree of prudence and care

which the conditions demand. It is impossible to formulate any more precise definition of these relative rights and duties." To what extent this police regulation has modified this law, or whether it has modified it at all, is difficult to determine. (*Metzger* v. *Cushman's Sons, Inc.*, 243 N. Y. 118.) At common law it was equally the duty of an approaching automobilist to slow down and stop, if necessary, to permit pedestrians on crossings to pass. The court seldom, if ever, charged the jury in these words, rather leaving it to twelve men to say whether in the exercise of reasonable care, the vehicle should have slowed down and stopped under all the circumstances of the case. Every crossing accident differs; speed, surroundings, relative distance from the meeting point, all play an important part in determining reasonable care, and, as stated in the *Baker* case, the best the law can do is to say to each party that in crossing he must use reasonable care to look out for those exercising a like right. Any interpretation of this traffic regulation which would require all vehicles to slow down or stop every time a person was on any part of a street crossing would jam traffic and be unreasonable.

There is a feeling, however, that this regulation has varied the common-law rule and made the duty more onerous for the vehicle driver. No doubt this was the intention of the Police Commissioner. Counsel in this case have assumed that the regulation required an automobilist to give way, slow up or stop whenever a pedestrian was crossing on a crosswalk, if necessary to enable him to get across the street; in other words, that the foot passenger has the right of way. Upon the trial of this case, which grew out of a crossing accident, the plaintiff introduced the regulation, and the judge charged the jury that proof of the violation was some evidence of negligence.

Assuming, therefore, that this rule has relaxed the care which the pedestrian must take, and increases the responsibility of the motorist, we come to the question whether

the Commissioner had the power under section 315 of the charter to make any such rule. The control of traffic by policemen, signal lights, signs, direction posts and safety zones are familiar to us all, and have as a rule been wisely and efficiently enforced throughout the cities of this State. Necessity has called for such action upon the part of the police authorities, and such power is to be found in most of the city charters. Highway commissioners have similar control outside of the municipalities. Most of these devices notify the driver and the pedestrian on the spot what to do and where to go. In one instance, the policeman raises his hand — physical evidence of the power of the law. Where the policeman is not stationed, there is the red and green light, or the sign post, or disk, indicating one-way traffic, or the direction to be taken. In the absence of any of these instrumentalities to show the public what the law requires, can the Police Commissioner adopt a rule having the force of an ordinance? The Legislature may confer such power upon the Police Commissioner, provided the rule is reasonable, the same as it has done in conferring like power upon the health department, building department or the Board of Aldermen. (See above cited cases.) It may delegate its inherent power over these local matters to that instrumentality in the city government which it considers to be the most efficient and appropriate.

After the language of Mr. Justice GAYNOR, at the February, 1905, Special Term, in *Peace* v. *McAdoo* (46 Misc. Rep. 295), judicial but not prophetic, and the opinion of the Appellate Division in the same case (110 App. Div. 13), from which two justices dissented, the charter of the city, section 315, was amended, giving the Police Commissioner the right to make rules and regulations (Laws of 1905, ch. 621, to take effect May 26, 1905; again amended by Laws of 1914, ch. 455). Such rules do not apply to the government of the force, as these are covered by section 300 of the charter, and a

violation of the rules under section 315 is made a misdemeanor. Violation of a departmental regulation would result in discipline or dismissal of the officer, not in fine or imprisonment, as stated in section 315.

This rule in question was, therefore, within the powers conferred upon the Police Commissioner. It is not unreasonable if rightly interpreted and applied; neither is it such a radical change in a common-law right as to require an act of the Legislature and not an ordinance. (*Thousand Island Park Assn.* v. *Tucker,* 173 N. Y. 203, at p. 210; *Town of Fulton* v. *Norteman,* 60 W. Va. 562; *Maryland* v. *Mott,* 61 Md. 297.) It is a regulation for the proper use of the street at highway crossings.

No question is raised as to the making or adoption of this rule by the Commissioner, or of its validity, if within his powers. No specific provision of the charter, which I can find, requires the publication of such rules, although the custom is to publish them once in the *City Record* the same as other regulations having the effect of ordinances. They are also published for distribution in pamphlet form. In the absence, however, of a statutory or charter provision directing that ordinances be published before they take effect, no publication is necessary. (Dillon, Municipal Corporations [5th ed.], vol. 2, § 603, p. 945.) This point, however, we will reserve for future consideration, should it arise, as counsel in this case only raised objection to the application of the rule to the facts of the case and has not questioned the sufficiency or method of its adoption. No point was made of publication or notice.

*Castro* v. *New York Railways Corp.* (224 App. Div. 623) has not been cited for reference as it is under review in this subsequent litigation.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.