In the Matter of the Application of WILLIAM H. SMITH and Others, Petitioners, for an Order against WILLIAM FELLOWES MORGAN, JR., as Commissioner of Public Markets, Weights and Measures of the City of New York, Defendant.*

Supreme Court, Special Term, New York County, April 9, 1938.

* Affd., 254 App. Div. 672.

*Abraham Buchman,* for the petitioners.

*William C. Chanler, Corporation Counsel [Charles C. Weinstein* and *Francis J. Bloustein* of counsel], for the respondent.

McLaughlin (Charles B.), J. This is an application by various push cart peddlers who have heretofore been licensed to do business in the Ninth Avenue Market, popularly known as " Paddy's Market," for an order directing the commissioner of markets of the city of New York to issue to them new licenses for the year 1938 in renewal of licenses heretofore held.

In December, 1937, the action of the commissioner of markets in revoking all permits for the Ninth Avenue Market was upheld at Special Term, but the Appellate Division reversed (*Matter of Smith* v. *Morgan,* 253 App. Div. 239), on the ground that the Code of Ordinances (Chap. 15, art. 2, § 20) having established forty-eight open-air markets in New York city, including the Ninth Avenue Market, the commissioner of markets could not revoke all permits for the Ninth Avenue Market and thereby, in effect, abolish a market which had been established by the legislative body of the city. The following language of the opinion, written by Mr. Justice Dore, contains the gist of the holding (pp. 244, 245): " The claim here is that the commissioner has power completely

to abolish and end market areas and sections set up by the ordinance. We hold that the commissioner has no such power; that he may rule and regulate with the approval of the board of estimate and apportionment those market lands which have been designated by the board of aldermen as public markets, but he cannot, by his own act, unsanctioned and unapproved, completely abolish such public markets. His order in question here is an edict of complete prohibition, not of regulation."

On January 1, 1938, the new charter went into effect. At the same time the Administrative Code for the City of New York superseded the Code of Ordinances. Chapter 15 of the Code of Ordinances, dealing with markets, was specifically repealed (Laws of 1937, chap. 929, § 2 [Schedule of Laws Repealed, p. 1741]). Neither the new charter nor the Administrative Code contains any provision setting aside any specific areas for market purposes, and, beginning January 1, 1938, there was, therefore, no statute in existence setting aside or designating streets or other locations for public markets. On February 3, 1938, the board of estimate adopted a resolution (Calendar No. 4) setting aside for public market purposes portions of a number of designated streets, in accordance with recommendations by the commissioner of markets which the resolution specifically approved. The area previously occupied by the Ninth Avenue Market is not included among the areas set aside for market purposes in the resolution.

If said resolution of the board of estimate is valid, it is clear that the commissioner of markets has no power to issue permits for the area formerly comprising the Ninth Avenue Market and thus, in effect, establish an additional market. To quote from the opinion of the Appellate Division: " A reading of the section of the ordinance referred to in its context and section 261 and other relevant sections of the Agriculture and Markets Law indicates the intention of the Legislature to invest the commissioner of markets of a city with the regulation of public markets but not with the power either to *establish* or abolish them at will." (Italics this court's.)

The situation is unaffected by the adoption of the new charter, for the only provision therein as to the powers of the commissioner of markets is that contained in section 833, which reads as follows: " The commissioner shall have the powers of a commissioner of public markets under the Agriculture and Markets Law, except that the construction and repair of buildings and structures under his jurisdiction shall be carried out by the department of public

works, and shall enforce all laws in relation to weights and measures."

The commissioner's powers under the Agriculture and Markets Law have been characterized by the Appellate Division as " purely executive, administrative and regulatory " and as conferring no power on the commissioner, either expressly or by implication, " to establish or abolish public markets." Indeed, the court specifically declared that " under the new charter which came into effect January 1, 1938 (Chap. 36, § 833), it is to be noted that the commissioner of markets is invested with ' the powers of a commissioner of public markets under the Agriculture and Markets Law,' which, as we have pointed out above, are strictly limited to regulation and give no power either to establish or abolish public markets that have been dedicated by the proper statutory authority."

The validity of the resolution of the board of estimate is, however, assailed by the petitioners on various grounds, which will be taken up in order.

The petitioners' first contention is that the repeal of chapter 15 of the Code of Ordinances " is void because of the misrepresentation or concealment practiced upon the Legislature by the city's representatives." They state that to secure the prompt passage of the Administrative Code, consisting of three thick volumes, at the special session of the Legislature which had been called by the Governor in December, 1937, the city administration gave assurances that the three volumes constituted only an orderly compilation of all the laws theretofore in effect —" nothing changed, nothing added, and nothing taken away." Affidavits of various members of the Legislature are submitted which state that the affiants voted for the Code in reliance on representations that it made no substantive changes in the law applicable to the city of New York and merely codified and restated the statutes, local laws and ordinances then in force affecting the city. Even if it be assumed, however, that the passage of the Administrative Code by the Legislature was the result of misrepresentations as to the contents of the Code, it is clear that the validity of the Code is unaffected. Legislation may not be overthrown or invalidated on a showing that the legislators were acting under a misapprehension in enacting the legislation or were influenced by improper motives or were ignorant as to the nature of effects of the legislation. (*Baird* v. *Mayor of New York*, 96 N. Y. 567, at p. 581; *Matter of New York & Brooklyn Bridge*, 72 id. 527; *Waterloo Woolen Mfg. Co.* v. *Shanahan*, 128 id. 345, 360; *Matter of Peck*, 231 App. Div. 99, 100.)

The petitioners' second contention is that the Administrative Code did not effect a repeal of chapter 15 of the Code of Ordinances. They rely upon the following language of the fourth sentence of section 982–1.0 of the Code (p. 1531): " If in this Code there shall have been incorporated any *new* provision, which is not a revision, consolidation, codification, continuance or restatement of the provisions of a statute, local law, or ordinance applicable to the city of New York and in force on the thirty-first day of December, nineteen hundred thirty-seven, except as the same shall have been necessary to harmonize the provisions of this Code with the provisions of the New York City Charter, such *new* provision shall not become effective, but shall be deemed an inadvertence or error." (Italics the court's.)

Recognizing that the language above quoted applies only to a " new provision," the petitioners maintain that the repeal of chapter 15 of the Code of Ordinances must be deemed a new provision. That there is no merit in this claim becomes apparent when one reads the second sentence of section 982–1.0, *supra*. " Insofar as this act revises, consolidates, codifies, continues or restates the provisions of any statutes, local laws or ordinances, applicable to the City of New York and in force on December thirty-first, nineteen hundred thirty-seven, such provisions shall be deemed unchanged in substance and effect except as may be necessary to harmonize them with the New York city charter *except as any of such provisions are specifically repealed by this act.*" (Italics the court's.)

The italicized language clearly indicates that the Legislature intended to give full effect to the specific appeal of any provisions of statutes, local laws or ordinances applicable to the city of New York, and that the words " new provision," used in the fourth sentence of the section, were intended to apply only to an affirmative additional provision rather than to the repeal of a former provision — such repeal being nothing more than the omission of a provision and not the incorporation of a new provision. As previously pointed out, chapter 15 of the Code of Ordinances was specifically repealed (Laws of 1937, chap. 929, § 2, p. 1741), and it, therefore, follows that the petitioners' argument that the repeal is ineffective under the provisions of the fourth sentence of section 982–1.0 must be overruled.

We come now to the petitioners' claim that the setting aside of designated streets for public market purposes is the exercise of a power which is legislative in nature, and which, therefore, could only be exercised by the council — not by the board of estimate. They point to the provisions of the new charter that " The Council

shall be vested with the legislative power of the city" (Chap. 2, § 21), and to the statement in the report of the City Charter Revision Commission that "The Council is the legislative body and is vested with the entire legislative power of the city," while "the primary function of the Board of Estimate, on the other hand, is to direct the business affairs of the city." (Tanzer, New York City Charter, p. 480.)

It is quite true that prior to January 1, 1938, the setting aside of streets and other areas for public market purposes had been accomplished in the Code of Ordinances enacted by the board of aldermen, the city legislative body, and not by the board of estimate and apportionment. In the Appellate Division opinion previously referred to, Mr. Justice DORE upheld the power of the board of aldermen to set aside areas for public markets in the following language: "The authority of the board of aldermen to enact section 20, article 2, chapter 15, of the Code of Ordinances is not questioned. That power was vested in the board by section 47 and section 49, subdivision 9, of the Greater New York Charter and section 267 of the Agriculture and Markets Law."

It is to be noted, however, that the validity of a similar resolution of the board of estimate and apportionment, had there been one, was not before the Appellate Division for consideration, and that its opinion was limited to the validity of the ordinance enacted by the board of aldermen. Section 267 of the Agriculture and Markets Law, referred to in the portion of the opinion quoted above, provides that the power to designate city lands for use as public markets shall reside in "the local authorities of a city in which a department of public markets shall be created under the provisions of this article, *in whom is vested the power to assign lands of such city for public uses.*" (Italics the court's.) Section 47 of the former charter provided that "The board of aldermen shall have power to provide by ordinance for the acq isition, construction or establishment of markets," and section 49, subdivision 9, provided that the board of aldermen was to have the power to make, amend and repeal ordinances, rules, regulations and by-laws not inconsistent with other provisions of the charter, or with the Constitution and laws of the United States or of New York State "in relation to the construction, repair, care and use of markets." It is to be observed that the provisions of sections 47 and 49 above mentioned contain no reference *to the use of public streets and highways* for market purposes. The control of streets, avenues, highways and all other public lands was vested, under the provisions of section 242 of the former charter, in the board of estimate and apportionment, which was also, by the terms of said section, given "the

exclusive power in behalf of the city " to grant franchise, rights or contracts involving the use of any streets, avenues, highways and other public lands. Section 242 contained an express provision that " this section shall not prevent the exercise by the board of aldermen of the powers expressly granted it by sections forty-nine, fifty, fifty-one and fifty-two of this act," but it went on to add that " *such exercise of power by the board of aldermen shall in every case be subject to the control by this act granted to the board of estimate and apportionment over all the streets, avenues, highways, * * * which are within or belong to the city.*" If sections 49, 50 and 242 of the former charter are read together it would seem that under said charter the board of estimate and apportionment, by reason of its exclusive control of streets, avenues, highways and other public lands, and by reason of the other provisions of section 242, possessed a power superior to that of the board of aldermen in the setting aside of public streets and lands for market purposes. (Cf. *Cherubino* v. *Meenan*, 253 N. Y. 462, 464.) Moreover, the board of estimate and apportionment, rather than the board of aldermen, constituted " the local authorities * * * in whom is vested the power to assign lands of such city for public uses " within the meaning of section 267 of the Agriculture and Markets Law. In other words, under the former charter, the board of aldermen had the right to set aside areas for public market purposes, but the board of estimate and apportionment also possessed the same right, and, in case of conflict between the two bodies, a superior right. In the situation involved on the appeal to the Appellate Division no conflict between the board of estimate and apportionment and the board of aldermen was involved, and the validity of chapter 15 of the Code of Ordinances was, therefore, not questioned.

The present charter contains no specific provisions in regard to markets except those to be found in sections 831 to 833, inclusive. These sections merely provide for a department of markets to be headed by a commissioner of public markets (§ 831), for the appointment of a deputy commissioner (§ 832), for the exercise by the commissioner of markets of the powers of a commissioner of public markets under the Agriculture and Markets Law, and for the enforcement by the commissioner of all laws in relation to weights and measures (§ 833). No express provisions are to be found giving the council any powers in regard to markets. The only provisions of the charter which appear to have any bearing on the present controversy are sections 70 and 362. Section 70 provides that " the board of estimate, subject to this charter, shall exercise all the powers vested in the city except as otherwise provided by law," while section 362 provides that " the board of estimate *shall have*

*the control of the streets of the city*, except as in this charter otherwise provided, *and shall have the exclusive power in behalf of the city to grant franchises or rights or make contracts providing for or involving the occupation or use of any of the streets of the city*, whether on, under or over the surface thereof, for railroads, pipe or other conduits or ways or otherwise for the transportation of persons or property or the transmission of gas, electricity, steam, light, heat or power, or the installation of transformer vaults, *and to give the consent of the city to any franchise or right of any kind or nature whatsoever for or relating to the occupation or use of the streets of the city under the provisions of the Constitution or of any statute.*" (Italics the court's.) These exclusive powers vested in the board of estimate would seem to constitute the board " the local authorities of a city in which a department of public markets shall be created under the provisions of this article, in whom is vested the power to assign lands of such city for public uses," within the meaning of section 267 of the Agriculture and Markets Law. It follows that under the provisions of section 267 it is the board of estimate which has the right to " designate for use as public markets any lands owned by the city and not dedicated or devoted to another inconsistent use." It is to be borne in mind that the provisions of the charter in regard to markets (§§ 831, 832, 833), previously referred to, evidence an intention to have the entire question of markets controlled by the provisions of the Agriculture and Markets Law. Even if it be assumed, therefore, for the purpose of argument, that the setting aside of streets and other public lands for market purposes is ordinarily a legislative function, the provisions of section 267 of the Agriculture and Markets Law and of section 362 of the new charter, as well as the omission of any express provision giving the council the power to set aside streets and public lands for market purposes, all make irresistible the conclusion that the board of estimate was intended to have and does have the power to set aside streets and other public lands for market purposes.

In other words, it is unnecessary to determine whether the setting aside of streets and other public property for market purposes is an administrative or a legislative function in view of the fact that section 267 of the Agriculture and Markets Law appears expressly to confer the power to exercise that function upon that branch of the city government which possesses the power to assign lands of the city for public uses. This branch of the government, in the city of New York, is the board of estimate.

None of the other points made by the petitioners merit discussion.

In view of the fact that the resolution of the board of estimate setting aside the various areas for market purposes does not include

among the areas so set aside the location formerly occupied by the Ninth Avenue Market, the present motion to compel the commissioner of markets to issue permits within the territory formerly comprising the Ninth Avenue Market must be denied.  Motion denied.