558 F.2d 1107
 Richard D. FRIEDMAN, Individually and on behalf of the class
comprising all persons who are owners of, or are licensed to
operate an automobile in the State of New York and City of
New York, and on behalf of the class comprising all persons
who have received parking tickets and paid fines thereon
under the circumstances described herein for the period July
1, 1970 to date hereof, within the City of New York,
Nicholas A. Arena, Fran Lee, and Harold C. Harrison,
Plaintiffs-Appellants,
v.
Abraham D. BEAME, Mayor of the City of New York, Harrison J.
Goldin, Comptroller of the City of New York, Alexander J.
Mautner, Transportation Administrator of the City of New
York, Theodore Karagheuzoff, Commissioner of Traffic of the
City of New York and Harry Viccola, Director of the Parking
Violations Bureau of the City of New York, Individually and
in their respective capacities, Defendants-Respondents.
 No. 1305, Docket 77-7095.
 United States Court of Appeals,
Second Circuit.
 Argued June 16, 1977.
Decided July 21, 1977.
 
 Richard D. Friedman, New York City (Friedman, Friedman, Levy & Bottiglieri, New York City), for plaintiffs-appellants.
 Paul T. Rephen, New York City (W. Bernard Richland, Corp. Counsel, L. Kevin Sheridan, New York City, of counsel), for defendants-respondents.
 Before WATERMAN, SMITH and OAKES, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 This is an appeal from a judgment of the United States District Court for the Eastern District of New York, Jack B. Weinstein, Judge, granting defendants' motion to dismiss a complaint based on claims that the City of New York's parking regulations are the result of an improper delegation of legislative authority and violate the fourteenth amendment. We find no merit in either claim and affirm.
 
 I.
 
 2
 In January and February, 1976 Richard Friedman, an attorney, received summonses for three alleged violations of the City of New York's parking regulations ("the parking regulations"). He pleaded not guilty, and all three are now pending before the Parking Violations Bureau of the City of New York ("the Bureau"). On September 8, 1976 he received a notice from the Bureau that he was to be certified as a "scofflaw." On September 9, 1976 he filed a class action complaint, alleging a violation of 42 U.S.C. § 1983 and seeking declaratory and injunctive relief and $15 million in damages. The defendants are the Mayor and four other officials of the City of New York. Later in September 1976 Friedman was notified by the New York State Department of Motor Vehicles that his automobile registration would not be renewed because of his designation as a "scofflaw."
 
 
 3
 The defendants opposed Friedman's motion to certify the class on the grounds that Friedman was both the named plaintiff and the attorney for the class. On January 14, 1977 Nicholas Arena, Harold Harrison, and Fran Lee moved to intervene as plaintiffs and filed their own complaints.[1] The defendants opposed their motion to intervene. On January 21, 1977 Judge Weinstein ordered that the action be certified as a class action under Rule 23(b), Fed.R.Civ.P.[2] and that Arena, Harrison, and Lee be made parties to the action under Rule 24, Fed.R.Civ.P. Judge Weinstein then ordered the action dismissed, and the plaintiffs now appeal.
 
 II.
 
 4
 In the affidavits of Arena and Harrison each says that he owns a car, is licensed to drive in New York, has received a parking summons in New York City, and has paid the fine. The Supreme Court's recent decision in Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) casts some doubt on whether either Arena or Harrison, having paid his fine, has standing in this case. Juidice involved eight plaintiffs who sought to enjoin, pursuant to 42 U.S.C. § 1983, the statute under which they were held in contempt by a New York court. Six of the plaintiffs had paid their fines. The Supreme Court said that these six plaintiffs had no standing to challenge either the contempt proceeding or the original default judgment, "(s)ince the complaint does not allege the likelihood, or even the possibility, of future contempt orders . . . . O'Shea v. Littleton (414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)) supra, at 493-499, 94 S.Ct. at 675-678; Linda R.S. v. Richard D., 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973)." Id. at 333, 97 S.Ct. at 1216 n.9.
 
 
 5
 Arena and Harrison, unlike the plaintiffs in O'Shea, Linda R.S., and Juidice, seek damages as well as injunctive and declaratory relief. In O'Shea the Supreme Court, in holding that the complaint failed to establish the requisite "case or controversy," said "(i)mportant to this assessment is the absence of allegations that any relevant criminal statute of the State of Illinois is unconstitutional on its face or as applied or that respondents have been or will be improperly charged with violating criminal law." 414 U.S. 496, 94 S.Ct. 676. Here the entire thrust of the complaint is that the parking regulations are unconstitutional on their face, and it is undisputed that Arena and Harrison have paid a fine for violating the parking regulations. We think Arena and Harrison have alleged "some threatened or actual injury resulting from the putatively illegal action," Linda R.S., 410 U.S. 617, 93 S.Ct. 1148, and we hold that Arena and Harrison have standing to challenge the parking regulations. In view of our disposition of their challenge, infra, we have no occasion to consider any other defenses the defendants might raise against the damage claims of Arena and Harrison.[3]
 
 
 6
 Lee's affidavit says, in pertinent part, that she is licensed to drive a car in New York and that "I, as a strong advocate in the fight against discrimination of the type described in the complaint, am very much interested in the outcome."[4] We think that this assertion does not present the constitutional question "in the context of a specific live grievance." Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969). F. X. Maltz, Ltd. v. Morgenthau, 556 F.2d 123, 125 (2d Cir. 1977). We hold that Lee has no standing in this case.
 
 
 7
 Invoking Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, the defendants argue that the district court should have abstained from considering Friedman's claim.[5] Friedman argues that Younger is applicable only in pending judicial proceedings involving criminal statutes. It is now clear that the federal courts should sometimes abstain when there are pending state judicial proceedings in a civil matter. Trainor v. Hernandez, --- U.S. ---, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); Huffman v. Pursue Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The Supreme Court has not, however, decided whether Younger should ever be applied when there is a pending administrative hearing.[6] Since Arena and Harrison raise the same claims as Friedman, we need not now decide whether Younger bars our consideration of Friedman's claim.[7] Cf. McCune v. Frank, 521 F.2d 1152, 1158 (2d Cir. 1975) (refrain from passing on the applicability of Younger to a pending police department's disciplinary hearing).
 
 III.
 
 8
 Plaintiffs claim that there has been an unlawful delegation of legislative authority to the City of New York officials who have promulgated the parking regulations. While plaintiffs concede that this claim "is a question of state and not federal law"[8] (Appellants' Brief at 36), we have pendent jurisdiction to decide it. Hagans v. Lavine, 415 U.S. 528, 546-47, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); Siler v. Louisville & Nashville R.R.,213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909).
 
 
 9
 New York Vehicle and Traffic Law § 1642(a)(2) authorizes the legislative body of any city having a population in excess of one million to regulate traffic (including parking), and § 1603(a) authorizes the legislative body of a city to delegate its authority "to any official, board or agency thereof designated by it."
 
 
 10
 Plaintiffs ignore Cherubino v. Meenan, 253 N.Y. 462, 171 N.E. 708 (1930), in which the New York Court of Appeals, in considering an earlier statute, unanimously said that the State of New York can lawfully delegate to the Police Commissioner of the City of New York, via its delegation to the City of New York, the power to make traffic rules and regulations. The only constraint on the Police Commissioner is that the rules be "reasonable." Id. at 466, 171 N.E. 708.
 
 
 11
 While Cherubino involved an earlier statute, we have no doubt that the New York courts would reach the same result if faced with the claim that the current statute is an improper delegation of legislative authority. Fieldston Property Owners' Ass'n v. City of New York, 44 Misc.2d 850, 255 N.Y.S.2d 398, 400 (Sup.Ct., Bronx Co. 1964), aff'd without opinion, 24 A.D.2d 556, 261 N.Y.S.2d 246, rev'd on other grounds, 16 N.Y.2d 267, 266 N.Y.S.2d 97, 213 N.E.2d 436 (1965). We hold that the parking regulations are not the result of an improper delegation of legislative authority.
 
 IV.
 
 12
 Plaintiffs claim that the parking regulations violate the fourteenth amendment because they set aside certain areas where only vehicles either bearing "DPL" or "FC" licenses or being operated by certain officials may be parked.
 
 
 13
 "( E)qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class" (footnotes omitted). Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (per curiam); Person v. Association of the Bar, 554 F.2d 534, 538 (2d Cir. 1977). Plaintiffs assert "that a classification excluding all but certain governmental employees and diplomats is 'inherently suspect' and furthermore, the right of the public to benefit from public property is a 'fundamental right' ". (Appellants' Brief at 24). We find this bald assertion, devoid of any analysis, unpersuasive.[9] The parking regulations "(do) not involve any discernible fundamental interest or affect with particularity any protected class. . . . (T)he test of constitutionality, therefore, is whether (the regulations have) a rational relation to a legitimate state interest." Ohio Bureau of Employment Services v. Hodory, --- U.S. ---, ---, 97 S.Ct. 1898, 1908, 52 L.Ed.2d 513 (1977).
 
 
 14
 The affidavit of defendant Theodore Karagheuzoff, Commissioner of the Department of Traffic of the City of New York ("the Department"), says (P 18) that there are certain government officials who "must, on a regular basis, use a vehicle in the normal course of their business . . . (and) are required to regularly conduct their business for short periods of time, in buildings located in congested portions of the City."[10] We believe it is rational for the defendants to set aside certain parking areas for these officials.
 
 
 15
 Karagheuzoff's affidavit[11] also says (P 23) "(i)nasmuch as diplomatic vehicles were immune from criminal and administrative sanctions against illegal parking," the Department, in order to reduce traffic congestion caused by illegally parked cars of diplomats, set aside certain parking areas for cars having a "DPL" or "FC" license plate. Plaintiffs suggest that a better way of reducing congestion would be to tow illegally parked vehicles. Assuming arguendo that plaintiffs' suggestion has merit, "a State 'does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.' " Massachusetts Board of Retirement v. Murgia, supra, 427 U.S. at 316, 96 S.Ct. at 2568. We believe that defendants' treatment of diplomatic vehicles is rational.
 
 
 16
 We hold that the challenged portions of the parking regulations of the City of New York do not violate the fourteenth amendment. Cf. Railway Express Agency v. New York, 336 U.S. 106, 110, 69 S.Ct. 463, 93 L.Ed. 533 (1949) (traffic regulation prohibiting all advertising on trucks, except advertisements of products sold by the owner of the truck, does not violate the fourteenth amendment).
 
 
 17
 Affirmed.
 
 
 
 [1]
 These complaints, like Friedman's, request a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284. The plaintiffs apparently did not press this claim in the district court, perhaps in recognition that 28 U.S.C. § 2281 was repealed as of August 12, 1976. P.L. 94-381, 90 Stat. 1119
 
 
 [2]
 Judge Weinstein's order did not define the class. It should have been precisely defined. For purposes of this appeal we assume he intended it to be as defined in Friedman's complaint:
 all those persons who are owners of, or are licensed to operate an automobile in the State and City of New York, and . . . all persons who have received parking tickets and paid fines thereon for the period of July 1, 1970 to date, under the circumstances described in this complaint.
 The defendants have not appealed from the order certifying the class.
 
 
 [3]
 If we were to deny standing to Arena and Harrison, we would then have to decide the difficult question, discussed infra, of whether the district court should have abstained from considering Friedman's claims. We consider it preferable to give standing to Arena and Harrison. Cf. Secretary of Navy v. Avrech, 418 U.S. 676, 677-78, 94 S.Ct. 3039, 41 L.Ed.2d 1033 (1974) (per curiam) (assuming arguendo that the district court had jurisdiction, district court was correct in denying relief); Franklin Savings Bank of New York v. Levy, 551 F.2d 521, 527-528 (2d Cir. 1977) (do not reach difficult jurisdictional issue and reverse district court on the merits)
 
 
 [4]
 The complete text of the pertinent parts of Lee's affidavit is:
 FIRST, I am a consumer editor and medical researchist with such major television stations as ABC. In addition, I am a member of both the New York Academy of Science and the National Science Writers Association and the head of the Fran Lee Foundation, which disseminates consumer and medical information. I make this affidavit in support of the motion in the above-entitled action, which is attached hereto and made a part hereof.
 SECOND: I am duly licensed by the Motor Vehicle Department of the State of New York, to operate an automobile.
 THIRD: I have been advised that the suit herein has been commenced, (Index 76 Civ. 1673), and I, as a strong advocate in the fight against discrimination of the type described in the complaint, am very much interested in the outcome, and would like to intervene and become a representative party plaintiff.
 
 
 [5]
 Friedman's claims could have been raised in New York courts, pursuant to Article 78, N.Y.C.P.L.R. § 7801 et seq. Cf. Gruen v. Parking Violations Bureau of the City of New York, 395 N.Y.S.2d 202 (1977) (App.Div.1977) (regulations pertaining to burden of proof are inconsistent with Administrative Code)
 
 
 [6]
 In Moore v. City of East Cleveland, --- U.S. ---, ---, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), Chief Justice Burger dissented and argued that the Supreme Court should not have reached the merits of the dispute about East Cleveland's zoning ordinance because Mrs. Moore had not sought a zoning variance; he said that the interests of federalism and comity made Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), applicable. Justices Stewart and Rehnquist, in their dissent, said Mrs. Moore was not obligated to exhaust her administrative remedies. Id. at ---, 97 S.Ct. 1932. Justices Powell, Brennan, Marshall, and Blackmun said that while "there are sound reasons for requiring exhaustion of administrative remedies in some situations," it was not necessary when "Mrs. Moore defends against the State's prosecution on the ground that the ordinance is facially invalid." Id. at ---, 97 S.Ct. at 1935 n. 5
 In Ohio Bureau of Employment Services v. Hodory, --- U.S. ---, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977) the district court had refused to abstain in a suit challenging, pursuant to 42 U.S.C. § 1983, an Ohio statute which denies unemployment benefits to striking workers. One of the two reasons for this refusal was the district court's view that Younger did not apply "to a challenge to administrative actions." Id., at ---, 97 S.Ct. at 1903. The Supreme Court said "we need not and do not express any view on whether the District Court erred in refusing to abstain on Younger grounds." Id. at ---, 97 S.Ct. at 1904 n. 10.
 In Dixon v. Love, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977), the Supreme Court, without any discussion of Younger considered the merits of Love's challenge to the Illinois Drivers License Law even though Love had not exhausted his administrative remedies after his driver's license was revoked.
 
 
 [7]
 Other courts of appeals have held that the same person may not be both a named plaintiff and the attorney for the class. Kramer v. Scientific Control Corp., 534 F.2d 1085, 1090 (3d Cir.), cert. denied, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976); Turoff v. May Co., 531 F.2d 1357, 1360 (6th Cir. 1976) (per curiam). Friedman can be the attorney for Arena and Harrison. We need not decide whether Friedman can be both a named plaintiff and the attorney for the class. Cf. Brick v. CPC International, Inc., 547 F.2d 185, 186-188 (2d Cir. 1976) (do not decide whether law partner of named plaintiff can be attorney for the class.)
 
 
 [8]
 The check on the authority of the executive branch of the federal government, flowing from the "delegation" doctrine, derives from the separation of powers and is not enforceable against the states. Sweezy v. State of New Hampshire, 354 U.S. 234, 255, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957); Dreyer v. Illinois, 187 U.S. 71, 84, 23 S.Ct. 28, 47 L.Ed. 79 (1902); Snell v. Wyman, 281 F.Supp. 853, 864 (S.D.N.Y.1968) (three-judge court), aff'd 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969) (per curiam)
 
 
 [9]
 Examples of a "fundamental right" include the right of a woman to make a private decision on whether to have an abortion, the right to vote, the right of interstate travel, the rights guaranteed by the first amendment, and the right to procreate. Examples of a "suspect class" include alienage, race, and ancestry. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312 nn. 3 and 4, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (per curiam)
 
 
 [10]
 Plaintiffs claim on appeal (Appellants' Brief at 17) that the defendants do not assign spaces in these areas on the basis of the type of work the officials perform. Without intimating any view on the merits of this claim, we doubt that the plaintiffs have standing to raise it as a constitutional claim. Since none of the plaintiffs is a government official, none is injured if the wrong government official receives permission to park in these restricted areas. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 260-263, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)
 Plaintiffs may pursue this claim in the New York courts, pursuant to Article 78, N.Y.C.P.L.R. §§ 7801 et seq., or seek to replace the defendants, pursuant to the New York State Constitution, Article II, § (1) and Article IX, § (1)(a) and (b).
 
 
 [11]
 We point out that in addition to their motion to dismiss, defendants also moved for summary judgment. In support of that motion, they submitted the affidavit of Theodore Karagheuzoff. Inasmuch as the affidavit, a matter outside the pleadings, was "presented to and (apparently) not excluded by the court," Fed.R.Civ.P. 12(b), the motion to dismiss should have also been treated as a motion for summary judgment. To resist effectively such a motion, Friedman was required to do more than merely rely on the conclusory allegations contained in the affidavit he submitted. Rather he was required to rebut the defense affidavits with opposing affidavits based on the personal knowledge of his affiants. This he did not do