**Michael B. SCHACHTER, M.D., John Doe, Richard Roe and Mary Moe, Plaintiffs,**

v.

**Robert P. WHALEN, M.D., Commissioner of Health of the State of New York, and Thaddeus J. Marawski, M.D., Executive Secretary of the State Board for Professional Misconduct of the State of New York, Defendants.**

**No. 78 Civ. 368 (CHT).**

United States District Court,
S. D. New York.

March 7, 1978.

Rothblatt, Rothblatt, Seijas & Peskin, New York City, for plaintiffs; Henry B. Rothblatt, Jon G. Rothblatt, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of State of N. Y., New York City, for defendants; Judith Gordon, Asst. Atty. Gen., New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Plaintiffs Michael B. Schachter, M.D., a physician licensed to practice medicine in the State of New York, and John Doe, Richard Roe and Mary Moe, anonymous individuals who are alleged to be Dr. Schachter's patients, bring this civil rights action seeking both a declaration that Sections 230(10)(k) and (*l*) of the New York Public Health Law are unconstitutional and an injunction against further enforcement of those statutory provisions.[1] Now before this Court is the plaintiffs' application for a preliminary injunction. Because the Court concludes, for the reasons set out below, that principles of abstention prohibit this Court's assertion of jurisdiction over the controversy, the application is denied and the complaint is dismissed.

The supervision and discipline of the practice of medicine in New York. State, traditionally the province of the Board of Regents, was recently delegated in part by the legislature to a newly created body known as the New York State Board for Professional Medical Conduct ("Board"). 1975 New York Laws ch. 109, §§ 28–29, 32 (McKinney's), as amended, 1977 New York Laws ch. 773, §§ 2–5 (McKinney's) *codified at* N.Y.Educ.Law §§ 6500, 6510–a *and* N.Y. Pub.Health Law § 230. The Board has been given the authority to investigate suspected professional misconduct, hold hearings thereon and make recommendations for professional discipline to the Board of Regents. N.Y.Pub.Health Law § 230(10).

It was brought to the Board's attention through "[c]omplaints received, as well as media reports of interviews with Doctor Schachter, together with other information obtained by the Office of Professional Medical Conduct," that Dr. Schachter, in the context of his medical practice, prescribes and administers nontoxic therapy to patients suffering from cancer. Among the medicines used in this therapy are two drugs, one known variously as "Laetrile," "Amygdalin" and "Vitamin B–17" and the other as "MA–7." Affidavit of Thaddeus J. Murawski, sworn to January 31, 1978, ¶ 7 ("Murawski Affidavit").

The Board contends that Dr. Schachter's "possible advocacy of Laetrile and 'MA–7' . . . as preferred methods of treating cancer and his possible claims of the successful treatment with these substances" might not be "supported by fact," and thus may constitute grounds for charges of professional misconduct under Sections 6509(2) and (9) of the New York Education Law, as well as numerous provisions of Sections 29.1 and 29.2 of Title 8 of the Official Compilation of New York Codes, Rules and Regulations. Therefore, a committee of the Board met on December 29, 1977 and authorized an investigation of Dr. Schachter. *Id.* ¶ 9 & Exh. 1; Memorandum in Opposition to Motion for Preliminary Injunction 13–14. As a first step in this investigation, the committee authorized the Board's Executive Secretary to issue subpoenas under the authority of N.Y.Pub.Health Law § 230(10)(*l*), one of the provisions challenged in this ac-

---

1. These sections provide:

    (k) The executive secretary of the board [for professional medical conduct] with the specific approval of a committee on professional conduct of the board shall have the power to issue subpoenas requiring persons to appear before the board and be examined with reference to a matter within the scope of the inquiry or the investigation being conducted by the board and produce books, papers, records or documents pertaining thereto.

    (*l*) The board or its representatives may examine and obtain records of patients in any investigation or proceeding by the board

acting within the scope of its authorization. Unless expressly waived by the patient, any information so obtained shall be confidential and shall not be disclosed except to the extent necessary for the proper function of the board and New York state board of regents and the name of the patient may not be disclosed by the board or its employees at any stage of the proceedings unless the patient has expressly consented. Any other use or dissemination by any person by any means, unless pursuant to a valid court order or otherwise provided by law, is prohibited. N.Y.Pub.Health Law § 230(10)(k)–(*l*).

tion. Murawski Affidavit Exh. 1. Accordingly, on January 18, 1978, Dr. Schachter was served with a subpoena duces tecum directing him to appear on January 27, 1978, and to furnish the Board with "[c]omplete medical charts and records for each and every person treated by you or under your direction with the drug commonly known as Laetrile" and with the same information for those treated "with a drug known as MA–7." Complaint ¶ 8 & Exh. A.

Dr. Schachter, having requested the Board to withdraw the subpoena, see N.Y. C.P.L.R. § 2304, brought this action in the federal court upon the Board's refusal. A temporary restraining order was entered by the Court January 26, 1978; [2] notwithstanding the expiration of this order, the defendants have voluntarily refrained from seeking enforcement of the subpoena in order to allow both sides to fully brief the issues.

### Abstention

In a landmark series of cases, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) et seq., the Supreme Court announced a basic jurisdictional principle— that federal courts should refrain from interfering with ongoing state criminal proceedings. More recently, the Court has indicated that this principle extends well beyond the criminal context of its initial application since

the " 'more vital consideration' " behind the Younger doctrine of nonintervention lay not in the fact that the state criminal process was involved but rather in

"'the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.' " Huffman v. Pursue, Ltd., 420 U.S., at 601 [95 S.Ct.

1200], quoting Younger, 401 U.S., at 44 [91 S.Ct. 746].

Juidice v. Vail, 430 U.S. 327, 334, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977). Thus, the Supreme Court has applied the Younger nonintervention principle where a federal plaintiff sought an injunction against a state court civil obscenity-nuisance proceeding, Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); where individuals subject to state court civil default judgments who were subpoenaed by their creditors sought relief from threatened state court contempt proceedings, Juidice v. Vail, supra ; and where individuals whose property had been attached as the automatic first step in a civil action by the state to recover allegedly fraudulently obtained welfare benefits sought federal court intervention against the attachment process. Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977).

■ In these decisions the Supreme Court has indicated that a federal court asked to take action which would interfere with an ongoing "state civil enforcement action," id. at 443, 97 S.Ct. 1911, should base any decision to abstain on several factors: (1) an analysis of the role played by the state in the ongoing proceeding and of the importance of state policies and interests sought to be vindicated therein, id. at 444, 97 S.Ct. 1911; Juidice v. Vail, supra, 430 U.S. at 335–36, 97 S.Ct. 1211; Huffman v. Pursue, Ltd., supra, 420 U.S. at 604, 95 S.Ct. 1200; (2) whether the plaintiffs "had an opportunity to present their federal claims in the state proceedings," Juidice v. Vail, supra, 430 U.S. at 337, 97 S.Ct. at 1218 (emphasis deleted); and (3) whether interference will result in duplicative legal proceedings and will reflect negatively on the state court's ability to enforce constitutional principles. Huffman v. Pursue, Ltd., supra, 420 U.S. at 604, 95 S.Ct. 1200.

The Supreme Court has not had occasion to· address itself in a full opinion to the application of these principles to federal

---

**2.** The defendants contend that this restraining order never became effective and that personal jurisdiction was never achieved over the defendants because the plaintiffs failed to comply with the service provisions of the Order to

Show Cause entered on January 26, 1978. This issue has not been briefed by the parties and is not reached by the Court in view of the Court's conclusion on the abstention issue.

interference in a pending state administrative proceeding. However, in *Geiger v. Jenkins*, 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971), *aff'g* 316 F.Supp. 370 (N.D.Ga.1970) (three-judge court), the Court affirmed on appeal the decision of a three-judge court to abstain from interfering in an ongoing state medical disciplinary proceeding. While the decision in *Geiger* is "somewhat opaque," as the Court recognized in *Gibson v. Berryhill*, 411 U.S. 564, 576, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), the exegesis of *Geiger* by the *Gibson* Court shows that *Geiger* rests in some measure upon the principle "that administrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings." *Id.* at 576–77, 93 S.Ct. at 1697. Indeed, *Gibson* itself seems to indicate that abstention in the face of an ongoing administrative proceeding is appropriate where the district court has determined that the federal plaintiff has "the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved." *Id.* at 577, 93 S.Ct. at 1697.

Moreover, the United States Court of Appeals for the Second Circuit has read the *Geiger* and *Gibson* decisions as indicating that the existence of ongoing state administrative proceedings is sufficient to trigger *Younger* abstention analysis by a federal court:

> A proceeding in a state court is not a prerequisite to the applicability of *Younger*. *Geiger* establishes that *Younger* has relevance to administrative proceedings, and the explanation of *Geiger* in *Gibson v. Berryhill* indicates that this applicability is subject to considerations similar to those subsequently enunciated in *Huffman, supra,* and *Anonymous v. Association of the Bar* [515 F.2d 427 (2d Cir. 1975)].

**3.** The plaintiffs cite *Friedman v. Beame,* 558 F.2d 1107 (2d Cir. 1977), for the proposition that "the question of whether *Younger* applies to administrative hearings is an open one." Plaintiffs' Reply Memorandum at 5, n.2. In *Friedman,* however, the court of appeals specifically avoided deciding whether *Younger* barred consideration of the named plaintiff's

*McCune v. Frank,* 521 F.2d 1152, 1158 (2d Cir. 1975) (citations omitted). At issue in *McCune* was federal interference in a county police department's disciplinary proceeding. Since there was a contention that the body charged with hearing the administrative proceeding was biased—a charge which, if substantiated, would make *Younger* abstention inappropriate, *Gibson v. Berryhill, supra*—the court of appeals did not finally decide the abstention issue but remanded the case to the district court for further factfinding.

Similarly, in *Anonymous v. Association of the Bar, supra,* the court of appeals ruled out federal intervention in an attorney disciplinary proceeding then pending before the Association of the Bar of the City of New York. Notwithstanding the fact that the proceeding was not then before a *judicial* tribunal, the court of appeals applied a *Younger* analysis, concluding that the importance of the state interest "in adjudicating the continuing professional fitness and character of its own [court] officers" was "at least as great" as the state interests at issue in *Huffman v. Pursue, Ltd., supra.* The court also found that

> [w]hatever federal constitutional questions are involved here can certainly be raised in the state courts and ultimately addressed to the Supreme Court . . .

*Id.* While noting the close relation between these administrative proceedings and the judiciary—ultimate imposition of sanctions in attorney disciplinary proceedings invested solely in the Appellate Division—the court of appeals also stated that "[e]ven before *Gibson* the applicability of *Younger* to administrative proceedings was announced in *Geiger v. Jenkins.*" *Id.* at 433 n.3.[3]

That a federal court contemplating interference with ongoing state administrative

claims since it found that there were also present before the court two plaintiffs who were deemed to be without any potential *Younger* problems. In so holding, the court made only a passing reference to *McCune v. Frank, supra,* and eschewed any mention whatsoever of *Anonymous v. Association of the Bar, supra.* Moreover, the *Friedman* court did not

proceedings must first apply the principles of *Younger* and its progeny has been accepted by district court judges in this circuit. In *Sreter v. Hynes*, 419 F.Supp. 546 (E.D.N.Y.1976), a case very similar to that at bar, Judge Pratt was asked to quash a subpoena issued and served upon a nursing home operator by the special prosecutor appointed to investigate the nursing home industry. Finding that the

> state is attempting to police a business which is one small part of an industry that is strongly affected with the public interest, is the beneficiary of public Medicaid funds, is extensively regulated by the state, and is so much in current disrepute as to cause the Governor of the state to appoint a commissioner to head an official inquiry into nursing home operations . . . and the State Attorney General to appoint defendant as a special prosecutor . . .

the court held that the principles of *Younger* "would lead this court to refrain from interfering with this investigation." *Id.* at 548.

Similarly, in *Lang v. Berger*, 427 F.Supp. 204 (S.D.N.Y.1977), Judge Weinfeld of this Court found abstention appropriate where a physician brought a federal action challenging an administrative proceeding in which the state was attempting to determine the physician's fitness to participate in the Medicaid program. Comparing the state interest at issue in *Lang* with that in *McCune v. Frank, supra*, Judge Weinfeld held that "the state's interest in this proceeding, which affects the health and safety of its citizens as well as the public fisc, is at least as great as its interest in the length of a policeman's hair." *Id.* at 215.

■ This Court concludes that the state interests at issue in this case are substantial and certainly sufficient to entitle the medical disciplinary proceedings to the deference afforded by the doctrine of abstention. *See Geiger v. Jenkins, supra*, 316 F.Supp. at 373 and cases cited therein. As was discussed above, the Supreme Court has noted that "it is apparent from *Geiger* that administrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings." *Gibson v. Berryhill, supra*, 411 U.S. at 576–77, 93 S.Ct. at 1697. There is no reason for the Court to conclude that the instant proceedings are not entitled to this respect. The plaintiffs have not alleged bias like that found in *Gibson* which would indicate that the State Board for Professional Medical Conduct is not qualified to hear this proceeding.[4]

consider the Supreme Court's analysis of the possible effect of a strong relationship between federal plaintiffs and state defendants on federal abstention, *Hicks v. Miranda*, 422 U.S. 332, 348–49, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) (discussed in text *infra* ), an analysis whose application might well have altered the *Friedman* result.

Insofar as *Rite Aid Corp. v. Board of Pharmacy*, 421 F.Supp. 1161 (D.N.J.1976) (three-judge court), *appeal dismissed pursuant to Sup.Ct.R. 60*, 430 U.S. 951, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977), could be taken to indicate that abstention is not appropriate in this case, this Court declines to follow it. The *Rite Aid* majority specifically held that "we are not convinced that the Supreme Court's holding in *Huffman* requires [the] additional extension of *Younger* to civil cases where a criminal nexus is absent." *Id.* at 1167. Such a conclusion is clearly erroneous, as the *Juidice* and *Trainor* cases indicate. Furthermore, the *Rite Aid* dissent pointed out that no state proceeding was currently pending, the Board of Pharmacy having rendered its decision and order almost two years prior to decision by the three-judge court.

*Id.* at 1180–81 (Stern, J., dissenting). Finally, no action was taken on this case by the Supreme Court, since the appeal was withdrawn on consent as permitted by Supreme Court Rule 60.

**4.** The membership of the New York State Board for Professional Medical Conduct is quite unlike that of the Alabama Board of Optometry, which was found to be biased against those charged in disciplinary proceedings in *Gibson v. Berryhill, supra*. In *Gibson*, the Supreme Court found, the Board was composed solely of optometrists who would personally benefit in their business from the Board's success in disqualifying those optometrists charged. 411 U.S. at 578, 93 S.Ct. 1689. In the instant case, however, the New York Board is composed of not less than 18 physicians appointed by the Commissioner on recommendations made by a number of medical institutions and associations in New York State, and of not less than seven lay members, appointed by the Commissioner with the approval of the Governor. N.Y.Pub.Health Law § 230(1).

Moreover, by this proceeding state officials seek to enforce state statutes and regulations concerning professional conduct, making this proceeding a "state civil enforcement action" within the meaning given to that term by the Supreme Court. *See Trainor v. Hernandez, supra,* 431 U.S. at 443–46, 97 S.Ct. 1911.

■ The plaintiffs' principal response to the defendants' *Younger* argument has two aspects. First, they contend that abstention is inappropriate since there is no state *proceeding* yet pending. Second, it is argued that even if the Court finds a pending proceeding, plaintiffs seek not to enjoin it in toto but only to enjoin enforcement of that part of the statute which grants subpoena power to the Board. These arguments are without merit. First, in determining whether a state proceeding has begun, the Court must look to state law. In this case, the law is clear—the statute itself begins: "Professional misconduct proceedings shall consist of: (a) Investigation." N.Y.Pub.Health Law § 230(10). Second, it is equally clear that the doctrine of *Younger* prohibits more than that narrow range of injunctions directed squarely at the state proceedings themselves. Rather, "[t]he rule in *Younger v. Harris* is designed to 'permit state courts to try state cases free from interference by the federal courts.'" *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975), *quoting Younger v. Harris, supra,* 401 U.S. at 43, 91 S.Ct. 746. This principle was recognized by Judge Pratt when he ruled that abstention was appropriate where the federal action sought only to quash a subpoena served in the state proceeding. *Sreter v. Hynes, supra.*

■ *Hicks* is also dispositive of a further argument—that since the state proceeding is against Dr. Schachter alone, the additional presence of three alleged patients as plaintiffs in the federal action—individuals who are not "parties" to the state proceeding—should prevent complete abstention. In *Hicks* the Supreme Court ruled that the district court should have abstained even though the federal plaintiffs were merely the employers of the state defendants and were not otherwise involved in the state

proceeding at the time the federal action was brought. In *Hicks,* as in the present case, both the non-state parties in the state and the federal proceedings were represented by a single attorney. The Court found that because the federal claims of the federal plaintiffs could be presented in the state proceeding and since the interests of the federal plaintiffs and the state defendants "were obviously intertwined," *id.* at 348–49, 95 S.Ct. 2281, abstention was appropriate since the comity considerations of *Younger* apply even "where the intervention is sought by some . . . not parties to the state case." *Id.* at 349, 95 S.Ct. at 2292. Thus, the fact that the "patients" present in this federal action are not parties to the state disciplinary proceeding is without significance where the patients seek to interfere in the state proceeding in the same manner as does Dr. Schachter—by blocking the investigative subpoena issued by the Board through a finding of statutory unconstitutionality.

■ With respect to a further *Younger* consideration, there is no doubt here that the plaintiffs "could have presented their federal . . . challenge . . . in the pending state proceeding." *Trainor v. Hernandez, supra,* 431 U.S. at 447, 97 S.Ct. at 1920. New York law concerning subpoenas issued in circumstances such as are presented here contemplates two methods of bringing a challenge to the propriety of those subpoenas. As a first alternative, the person subpoenaed may take the initiative and move in the state supreme court to "quash, fix conditions or modify" the subpoena. N.Y.C.P.L.R. § 2304. The only precondition to this motion is that a request must first be made directly to the issuer that the subpoena be withdrawn or modified. *Id.* On the other hand, if the person subpoenaed simply refuses to comply, the issuer may move in the supreme court to compel compliance. *Id.* § 2308(b). If still recalcitrant, the witness may then be produced in court on a warrant, and, once in court, be given an opportunity to demonstrate that he has "reasonable cause" not to comply with the subpoena. *Id.* In either instance, Dr. Schachter will have an oppor-

tunity to contest the validity of the subpoena and the constitutionality of the statute under which it was issued. Furthermore, the state court will have the power to re-shape the subpoena so as to remove any constitutionally repugnant requests it should find therein. The opportunity to litigate this issue before a neutral state court forum, as expressly contemplated by the full statutory scheme within which this subpoena was issued, is sufficient to satisfy this aspect of the *Younger* test. In this regard, this case differs substantially from many earlier abstention cases involving state administrative proceedings since the plaintiffs here neither challenge the constitutional propriety of the administrative body in which the proceeding is pending nor are they being forced to present their constitutional question to that administrative body. Thus, for this Court to step into the midst of these proceedings to take the place of the state court would certainly "reflect negatively upon the state court's ability to enforce constitutional principles." *Juidice v. Vail, supra,* 430 U.S. at 327, 97 S.Ct. at 1213.

In sum, the Court concludes that it must abstain from asserting its jurisdiction over this case. Accordingly, the motion for a preliminary injunction is denied, and the complaint is dismissed.

Settle judgment on notice.